## MARTIN v. KOPPITZ-MELCHER BREWING COMPANY.

[No. 21,890. Filed October 10, 1911.]

1. CONTRACTS.—*Elements.*—*Law.*—The general law governing the
subject-matter of a contract constitutes an essential part of such
contract. p. 326.
2. INTOXICATING LIQUORS.— *Leases.*— *Contracts.*— *Applicants.*— A
contract between a landlord and a brewing company leasing to
such company a house for saloon purposes for one year, with the
privilege of two years more, providing "that if at any time a
majority of the qualified voters of the township * * * should
file a general remonstrance against granting a license * * *
the lease should expire at the expiration of the term of license
held by the party occupying the building at the time such general remonstrance is filed," expires where a license was granted
on February 5, an appeal being taken within ten days, and the

next term of the court at which the case might have been tried but was not being March 30, and a general remonstrance was filed on March 1, and one on July 5, and the lease required the defendant to procure a qualified person to make the application. pp. 326, 327.

3. INTOXICATING LIQUORS.—*Applications.*—*Commencement of License Granted on Appeal.*—After the expiration of the first term of court after the taking of an appeal from the granting of a license to retail liquors the applicant's right to sell ceases; and a license granted at a subsequent time operates from the time of the granting thereof at the trial. p. 327.

From Dekalb Circuit Court; *Emmett A. Bratton*, Judge.

Action by John J. Martin against the Koppitz-Melcher Brewing Company. From a judgment for defendant, plaintiff appeals. Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590. *Affirmed.*

*P. V. Hoffman* and *L. W. Welker*, for appellant.
*D. D. Moody* and *J. E. Pomeroy*, for appellee.

MYERS, J.—Action by appellant against appellee for rent due under a written lease. The questions presented arise upon exceptions to the conclusions of law upon the facts found.

The material facts are that on November 19, 1906, appellant leased to appellee, through one Gabriel, its agent, the premises described in the lease, for the term of three years from January 1, 1907, at $25 a month, with an option for two additional years, upon giving notice of its intention thirty days before the expiration of the term. The first story of the building was to be occupied for a saloon, and the second story for a residence, and for no other purpose. The building was located in the town of Albion, Noble county, Indiana. The lessee was a Michigan corporation, organized to manufacture and sell beer and other malt liquors, and had an agent in Auburn, Indiana, to sell and distribute its products in northern Indiana. Certain changes and repairs were to be made by the lessor, which he made. A clause in the lease provided that if at any time a majority of the

qualified voters of the township in which the property and the town of Albion are situate should file a general remonstrance against granting a license to any and all persons to sell intoxicating liquors in said township, the lease should expire at the expiration of the term of license held by the party or parties occupying the building at the time such general remonstrance should be filed.

At the time of the execution of the contract, one Gabriel, appellee's agent, had made arrangements with one Hayes, whereby appellee was to furnish the building for Hayes to use as a saloon. At the December term, 1906, Hayes was to apply for a license to sell intoxicating liquors and to conduct a saloon in the lower story of the building, and was to occupy the upper story as a residence, there being an implied agreement between Gabriel and Hayes that Hayes should buy defendant's beer at wholesale, and retail it in the saloon. There was no other consideration between the defendant and Hayes for defendant's renting and fitting up the building for said purpose.

Defendant, by its said agent, did furnish the building for the use of Hayes. Hayes was unable to procure a license, but at the February, 1907, session of said board of commissioners he procured one Hostetter to make application for license to retail intoxicating liquors in the building.

A remonstrance for cause, alleging the moral unfitness of Hostetter to receive a license, was filed against him, the trial of the remonstrance and application was decided in his favor, and he was granted a license to retail intoxicating liquors in the building for one year from February 5, 1907. Hostetter paid the license fee of $100, gave the necessary bond, to the approval of the auditor of Noble county, Indiana, procured a license, and began and continued to retail liquors at said place until April 25, 1907. After Hostetter had procured the license, and begun selling, and within ten days from the time the license was granted, the remonstrators perfected an appeal to the Noble Circuit Court. The next term of said court,

324     SUPREME COURT OF INDIANA,

Martin v. Koppitz-Melcher Brew. Co.—176 Ind. 321.

at which said cause might have been lawfully tried, was the March term, 1907, that terminated by limitation March 30, 1907. On the first day of such term of said court, Hostetter, on his application, was granted a change of venue to the Elkhart Circuit Court, where the cause remained pending until May 9, 1907, when Hostetter dismissed his cause, and also his application for license. Hostetter continued to sell liquor at said place under the license granted by the board of commissioners until April 25, 1907, having been advised that he had a right to continue to sell under his license until said cause could be tried in the Elkhart Circuit Court, where the cause was pending on change of venue. He ceased selling April 25, 1907, because the remonstrators explained to him that he was liable for numerous prosecutions for sales made after March 30, 1907, and that such sales were without the protection of such license. Hostetter agreed with the parties that if they would not prosecute him for such sales he would dismiss his application in the Elkhart Circuit Court, and discontinue selling liquors, and under that agreement he did dismiss his application. No other license was granted to any person to retail intoxicating liquors, or conduct a saloon in the premises, after the execution of the lease. During the time Hostetter conducted a saloon in the premises he bought from the defendant beer for retail in the saloon, to the value of $200, and also bought from other brewing companies beer and malt liquors.

March 1, 1907, a general remonstrance was filed with the auditor of Noble county against granting license to retail intoxicating liquors in Albion township where the premises are situate, three days before the regular March, 1907, session of the Board of Commissioners of the County of Noble, and a like remonstrance was filed July 5, 1907.

In April, 1907, the agent, Gabriel, notified plaintiff that he would surrender the lease and the premises, and would remove the furniture, and that plaintiff could secure a new tenant. On June 24, 1907, Gabriel removed the furniture

and vacated the premises, paid the rent up to July 1, 1907, offered to surrender possession of the premises, and tendered to plaintiff the keys, who refused to accept them, claiming that defendant was liable for rent until February 5, 1908, under the provisions of said lease.

Plaintiff did not take possession of, nor assume control over, the building until after February 5, 1908. No rent was paid by defendant after July 1, 1907. Under the contract, the rental value of said building and premises from July 1, 1907, to February 5, 1908, was $179.16, which is unpaid by defendant. The water and light rentals for the premises for the time, which were not paid by defendant, were $12.26, making a total of $191.42. The form of the contract was prepared by plaintiff and submitted to Gabriel, who had it typewritten in duplicate, with a few minor changes therein, but no material changes were made by him.

The court concluded that plaintiff is not entitled to recover any amount, and that defendant is entitled to recover its costs.

The briefs show that the court's conclusions were based upon two propositions: (1) That the contract was *ultra vires* and (2) that the lease terminated with the vacation of Hostetter's license by the appeal, with the protection afforded him under the statute until the expiration of the March term of the Dekalb Circuit Court. Appellant's contention is that the contract was executed, and hence no question of its being *ultra vires* is present, that the lease could only be terminated, as to an existing license, by the operation of a general remonstrance, that Hostetter's license was defeated because he was an unfit person, and that while the lease contemplated its termination in case no person would be allowed to renew an existing license, it did not contemplate its termination simply because an unfit person was denied license, that it contemplated that only fit persons would apply for license.

Appellant had no contract with any other person than

Martin v. Koppitz-Melcher Brew. Co.—176 Ind. 321.

appellee, and both parties knew that under the law appellee could not acquire a liquor license, and it was understood that some one would acquire license and operate the saloon. Appellant was in nowise interested in, or responsible for any one acquiring a license, or operating a business in the room. Had no license been obtained, or attempted to be obtained, and had no remonstrance been filed, he would have been entitled to his rent. If before any license could have been obtained, a general remonstrance had been filed, it could hardly be claimed that it was not contemplated that that should terminate the lease, though appellant's contention is that a general remonstrance could terminate the lease only "at the expiration of the term of the license held by the party or parties occupying the building at the time such general remonstrance should be filed." The parties seem to have contracted upon the theory that no difficulty would arise as to the acquisition of license by some one, and that a general remonstrance was the only contingency upon which the right to vend intoxicants depended. But the general law enters into the contract, so that they must also have contracted with the view to the making of an application by some qualified person, and good faith on the part of appellee required that a qualified person make the application, otherwise the situation would be precisely as if no application had been made, and other conditions would have to be looked to in determining the question as to when the lease expired.

Hostetter was granted a license on February 5, 1907. The first general remonstrance was filed on March 1, 1907, and the second on July 5, 1907. The appeal of the remonstrators vacated the license, with no protection to Hostetter, after March 30, 1907. *State* v. *Sopher* (1901), 157 Ind. 360.

After that date, he had no right to sell, and his application stood for trial *de novo*, and on July 5, 1907, when the second general remonstrance was filed, there was clearly no

license in force. *Hardy* v. *McKinney* (1886), 107 Ind. 364, and cases cited. If after March 30, 1907, Hostetter had been successful in obtaining license, it would not have been from February 5, 1907, but from the date it might have been granted upon a trial *de novo*. *Brown* v. *Dicus* (1909), 172 Ind. 51.

There was a tentative license held by Hostetter when the first general remonstrance was filed on March 1, 1907, and had he obtained a license on the trial, that remonstrance would have operated to defeat the renewal of the license at the expiration of one year from the time it was granted, and would have terminated the lease at that time by its express terms. At the time the remonstrance of July 5, 1907, was filed, there was clearly no right in any one to obtain license. Is it material, then, why Hostetter did not obtain license? We think not, and that the matter stands as if no application for license had been made, and the question is whether the failure to obtain license until a general remonstrance became operative terminated the lease. As the general law must be read into contracts of this character, a fair construction of the contract is that the parties contemplated that if the right to sell should be prohibited by a general remonstrance, the lease should terminate with that right. If Hostetter had been successful, the remonstrance of March 1, 1907, would have been effective for two years from that date, and it is a fair construction of the contract, as within the intention of the parties, that at any time when the right to sell should be discontinued the lease should terminate, and not that it could terminate only at the expiration of the term of a license, though that is the language used; for both parties were equally interested, and both were imbued with the idea that there would be no difficulty in obtaining license before a general remonstrance would become operative.

In view of our conclusions, it is unnecessary to consider

Federal Union Surety Co. v. Indiana, etc., Mfg. Co.—176 Ind. 328.

the question whether the contract is *ultra vires*, as the judgment must be affirmed upon the ground that the lease has terminated. It is so ordered.